UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

FRANK R. STEVENSON,

                      Petitioner,                    **MEMORANDUM & ORDER**
                                                                  17-CV-5251 (MKB)

        v.

SUPERINTENDENT MICHAEL CAPRA,

                      Respondent.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Petitioner Frank R. Stevenson, proceeding *pro se* and currently incarcerated at Sing Sing Correctional Facility, brings the above-captioned habeas corpus petition pursuant to 28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his federal constitutional rights. (Pet., Docket Entry No. 1.) Petitioner's claims arise from a judgment of conviction in New York State Supreme Court, Kings County, for rape in the first degree, sexual abuse in the first degree, and endangering the welfare of a child. (Pet. ¶ 4.) Currently before the Court is Petitioner's motion to hold his habeas petition in abeyance while he pursues a motion to vacate his conviction pursuant to New York Criminal Procedure Law ("C.P.L.") section 440.10 in state court. (Pet. Mot. Stay ("Pet. Mot."), Docket Entry No. 14.) For the reasons set forth below, Petitioner's motion is denied without prejudice.

**I. Background**

       On May 8, 2013, Petitioner was convicted of rape in the first degree, sexual abuse in the first degree, and endangering the welfare of a child. (Pet. ¶ 4.) The Appellate Division, Second Department affirmed the conviction on June 17, 2015. *People v. Stevenson*, 11 N.Y.S.3d 646 (App. Div. 2015). The New York Court of Appeals denied leave to appeal on December 28,

2015. *People v. Stevenson*, 26 N.Y.3d 1092 (2015). On September 30, 2016, Petitioner filed a motion in New York State Supreme Court, Kings County pursuant to C.P.L. section 440.10, seeking to vacate the judgment of conviction, arguing, *inter alia*, that he was deprived of his right to effective trial counsel for trial counsel's failure to retain a medical expert to offer testimony on Petitioner's behalf. (Pet. ¶ 10.) On April 7, 2017, Petitioner's motion was denied. *People v. Stevenson*, Kings County Ind. No. 945/11 (Decision and Order dated Apr. 7, 2017). Petitioner sought leave to appeal from the Appellate Division, Second Department, which leave was denied on August 10, 2017. *People v. Stevenson*, A.D. Case No. 2017-05066 (App. Div. 2017).

On September 28, 2017, Petitioner filed a timely habeas petition with the Court, which petition includes five claims that have been exhausted in state court, and three claims which Petitioner concedes are currently unexhausted. (*See* Pet. ¶¶ 19–21.) On October 20, 2017, Respondent filed a letter with the Court, arguing that the petition should be dismissed without prejudice as a mixed petition of exhausted and unexhausted claims, or in the alternative, that Petitioner should be permitted to withdraw the petition in order to exhaust the unexhausted claims, or amend the petition by removing the unexhausted claims. (Resp't Letter dated Oct. 20, 2017, Docket Entry No. 20.)

On December 14, 2017, Petitioner filed the instant motion, requesting that the Court hold his petition in abeyance while he pursues the three unexhausted claims in state court through a second motion to vacate his conviction pursuant to section 440.10. (Pet. Mot. 1.) On the same day he filed his motion to hold the petition in abeyance, Petitioner filed a second motion pursuant to section 440.10 in New York State Supreme Court, Kings County. (*See* Mot. to Vacate J., annexed to Pet. Mot., Docket Entry No. 14-1.)

2

### a. Facts relating to Petitioner's unexhausted claims

The following facts are taken from the petition and the moving papers from Petitioner's second motion to vacate his conviction pursuant to section 440.10, which motion is attached to his motion for a stay and abeyance. Petitioner claims that "during the pendency of his initial [section 440.10] motion to vacate" his conviction, Petitioner "discovered a copy" of an affidavit filed by the prosecution prior to his trial, indicating that nine pages of medical records reflecting the victim's examination after one of the incidents of sexual abuse (the "Medical Records") "were to be disclosed to the defense . . . ." (Aff. in Supp. of Mot. to Vacate J. ("Section 440 Aff.") ¶ 5, annexed to Pet. Mot., Docket Entry No. 14-1; Pet. ¶¶ 19–21; *see also* Perry A. Cerrato Aff., annexed to Pet. as Ex. 1.) However, according to Petitioner, only six pages were turned over to his defense counsel. (Section 440 Aff. ¶ 5; Pet. ¶¶ 19–21.) Petitioner asserts that, based on this discovery — to which he alerted his attorney — "post-conviction counsel could have withdrawn [the motion] and pursue[d] a *Brady* claim" based on trial counsel's failure to detect this issue, "but [post-conviction counsel] elected not to do so." (Section 440 Aff. ¶ 5.) Petitioner argues that the prosecution's failure to turn over the three purportedly withheld pages in advance of his trial gives rise to (1) a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), (2) a Sixth Amendment claim for ineffective assistance of trial counsel for failure to raise this issue, and (3) a Sixth Amendment claim for ineffective assistance of counsel due to his post-conviction counsel's failure to raise the first and second claims during his post-conviction proceedings in state court.[1] (Pet. ¶¶ 19–21.)

---

[1] Since his discovery of the allegedly withheld pages, Petitioner has made subsequent requests through New York's Freedom of Information Law, N.Y. Pub. Off. Law § 84 *et seq.* ("FOIL"), to obtain the three additional pages. (*See* Letters dated June 5, 2017 and July 4, 2017, annexed to Pet. Mot. as Ex. 2.) New York state's FOIL office has declined Petitioner's requests,

## II. Discussion

When a habeas petition is a "mixed" one — that is, one containing both exhausted and unexhausted claims —a district court has discretion to hold the petition in abeyance to permit a petitioner to exhaust the unexhausted claims, provided that the "petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that [he] engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 278 (2005). The Court considers whether Petitioner's three unexhausted claims meet the factors set forth in *Rhines* warranting a stay of his habeas petition.

### a. Petitioner's Brady claim is meritless

In a criminal prosecution, the government has a constitutional obligation to disclose material, exculpatory evidence to the defendant. *See Brady*, 373 U.S. at 87. Under *Brady*, the government has a constitutional duty to disclose favorable evidence to the accused where such evidence is "material either to guilt or to punishment." *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (quoting *Brady*, 373 U.S. at 87). A *Brady* violation consists of three factors: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching"; (2) "that evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Id.* at 281–82. Evidence is material and prejudice results if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A "reasonable probability" of a different result exists where the nondisclosure "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S.

---

claiming that the materials are exempt from disclosure on various legal grounds, including that they are documents relevant to pending judicial proceedings, and documents that identify the victim of a sex offense. (*See* Letters dated June 20, 2017 and July 17, 2017, annexed to Pet. Mot. as Ex. 2.)

419, 434 (1995). "A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." *Smith v. Cain*, 565 U.S. 73, 75 (2012) (quoting *Kyles*, 514 U.S. at 434) (internal quotation marks omitted).

Here, Petitioner's *Brady* claim is without merit. Petitioner has put forth no evidence supporting his claim that the prosecution did not provide all documents necessary to comply with its *Brady* obligations, including all nine pages of the Medical Records. Nor has Petitioner persuaded the Court that the allegedly withheld material may contain exculpatory or impeaching evidence. Finally, Petitioner has provided no basis to infer that he was prejudiced by any failure to provide the additional pages. Petitioner's bare assertion that trial counsel "could have used the withheld material to strengthen the defense" falls short of suggesting a "reasonable probability" of a different result at trial. *See Washington v. Walsh*, No. 10-CV-7288, 2015 WL 4154103, at *21 (S.D.N.Y. July 9, 2015) (finding no *Brady* violation where "the petitioner has failed to explain how the contents of the [withheld evidence] are favorable to his position or specify how he was prejudiced by their being withheld, aside from a conclusory assertion that he 'could [have] made valuable use' of them") (adopting report and recommendation).

Moreover, Petitioner's submissions reflect a belief that withheld evidence alone is sufficient to find a *Brady* violation regardless of the evidence's materiality. (*See* Pet. ¶ 21 ("Petitioner only has evidence the document's [sic] were withheld (hospital records Exhibit), and is not allowed to speculate what it is or may qualify as in regard to materiality although Petitioner's claim is borne out of evidence not suspicion . . . ."); *see also* Mem. in Supp. of Mot. to Vacate J. ("Section 440 Mem.") 10, annexed to Pet. Mot., Docket Entry No. 14-1 ("To

5

whatever degree of materiality the missing, 'withheld' pages may turn out to be, it can be assumed to be of use to the defense . . . unless the People prove otherwise.").) However, it is *Petitioner's* burden to establish not only that the pages withheld would have been favorable to his case, but that they are sufficiently material to "undermine[] confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434; *see also Ranta v. Bennett*, No. 97-CV-2169, 2000 WL 1100082, at *18 (E.D.N.Y. May 23, 2000) ("[I]t is not enough to warrant habeas relief to conclude that the newly discovered evidence, *if* credited by the jury, would have changed the result of the trial. Rather, the burden is on petitioner to 'convince' the court that there is a 'reasonable probability' that the jury would have been so affected." (citing *Strickler*, 527 U.S. at 289)), *aff'd*, 189 F. App'x 54 (2d Cir. 2006). While Petitioner's *Brady* claim may be more specific than other petitioners' "conclusory allegations that the government 'suppressed' or 'concealed' evidence," *Martinez v. Phillips*, No. 04-CV-8617, 2009 WL 1108515, at *26 (S.D.N.Y. Apr. 24, 2009), it is indistinguishable in its lack of support. *See Cornelius v. Cuomo*, No. 15-CV-1644, 2016 WL 4411417, at *3 (S.D.N.Y. Aug. 18, 2016) ("It is well established that the mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief." (quoting *Mallet v. Miller*, 432 F. Supp. 2d 366, 378 (S.D.N.Y. 2006))).

The Court recognizes that Petitioner does not have, nor has he claimed to have seen, the additional pages of the Medical Records. However, a petitioner asserting a *Brady* violation is not excused from raising a colorable claim simply because he is unable to obtain the allegedly withheld evidence. *See, e.g., Pudelski v. Wilson*, 576 F.3d 595, 615 (6th Cir. 2009) (rejecting *Brady* claim based on state's failure to produce police report because "[i]t is simply not reasonable to conclude that . . . hypothetical uses of the report, based on absolute speculation as to the contents of a report we have not seen, could even come close to meeting the burden that

6

the law places on the petitioner to show that the police report contained material evidence"); *Bell v. Napoli*, No. 08-CV-9900, 2010 WL 8039333, at *21 (S.D.N.Y. Aug. 24, 2010) (rejecting *Brady* claim based on unproduced surveillance tape because "[h]aving never actually seen the tape, [the petitioner's] assertion that it would show that he did not 'display' what reasonably could have been perceived to be a firearm is mere speculation"), *report and recommendation adopted*, No. 08-CV-9900, 2011 WL 6097729 (S.D.N.Y. Dec. 7, 2011).

Moreover, any likelihood that the additional pages are material is further diminished in light of the inconsiderable role medical evidence played at Petitioner's trial. As the record demonstrates, Dr. Madhu Voddi, a medical specialist in child abuse employed at the Brooklyn Child Advocacy Center where the victim was examined, and who reviewed the Medical Records, testified that the examination did not yield *any* physical indications of sexual abuse. (Trial Tr. at 238:17–269:20, Docket Entry No. 13.) As Dr. Voddi's testimony on cross-examination made clear, the conclusion made by the victim's examiners that sexual abuse had occurred was made on the basis of the victim's own statements, and in view of the fact that a lack of abnormal physical findings "doesn't preclude child sexual abuse." (Tr. 248:19–20.) Defense counsel asked Dr. Voddi:

> Defense Counsel: What you're telling this jury is that in spite of the fact there wasn't one single physical indication of abnormality to [the victim's] genitalia, the fact that she had made a complaint was sufficient alone for a finding of or diagnosis of child sexual abuse. Yes or No?
> The Witness: Yes.

(*Id.* at 256:8–13.) In addition, in his summation, Petitioner's trial counsel pointed repeatedly to the lack of any medical evidence corroborating the accusations against Petitioner. (*Id.* at 298–316.) This was also noted by the state court in denying Petitioner's initial motion to vacate his conviction pursuant to section 440.10. The state court observed that Petitioner's trial counsel

"elicited testimony from [the prosecution's] expert establishing that there was nothing in the victim's physical examination that corroborated her complaint" and that "the jury was well aware that Dr. Voddi's diagnosis of sexual assault was exclusively based upon the victim's statement and the assumption that it is true . . . and not based upon any physical evidence." *People v. Stevenson*, Kings County Ind. No. 945/11 (Decision and Order dated Apr. 7, 2017). Therefore, even assuming that the additional pages of the Medical Records revealed a completely unremarkable physical examination, they would be entirely consistent — and therefore cumulative — of the evidence presented at trial. *United States v. Malachowski*, 623 F. App'x 555, 558 (2d Cir. 2015) (affirming district court's finding that "withheld evidence pertaining to government witness . . . was cumulative of impeachment evidence that was presented at trial" and therefore did not rise to the level of a *Brady* violation). Only a chain of inferences — several supported only by Petitioner's bald assertions — could lead to the conclusion that the government withheld evidence that could have rendered a different result at trial. Petitioner's *Brady* claim is therefore meritless and does not warrant the imposition of a stay.[2]

---

[2] Prior to filing his motion to hold his habeas petition in abeyance with this Court, and his second motion to vacate his conviction pursuant to section 440.10 in the state court, Petitioner filed a letter dated October 31, 2017, arguing that the merits of his unexhausted claims should be heard on habeas review, and citing two Supreme Court decisions in support of his position. (Pet. Letter dated Oct. 31, 2017 at 1–2, Docket Entry No. 7 (citing *Strickler v. Greene*, 527 U.S. 263, 264 (1999) and *Trevino v. Thaler*, 569 U.S. 413, 418 (2013).) However, as Petitioner acknowledges, these decisions discuss the ways in which a petitioner whose claims have procedurally defaulted may nonetheless demonstrate "cause" in order to have them considered on habeas review. Even assuming — as some district courts have — that factors tending to show "cause" in the procedural default context would be sufficient to demonstrate "good cause" under *Rhines*, *see, e.g.*, *Davidson v. Capra*, No. 15-CV-9840, 2016 WL 6248449, at *2 (S.D.N.Y. Oct. 26, 2016), the decisions Petitioner cites do not eliminate the necessary inquiry into the merits of his claims under the *Rhines* test. *See Strickler*, 527 U.S. at 295 (holding that although the petitioner "satisfied two of the three components of a constitutional violation under *Brady*," he "has not shown that there is a reasonable probability that his conviction or sentence would have been different had the[] materials been disclosed" and

### b. Ineffective assistance of trial and post-conviction counsel

"The Sixth Amendment right to counsel is the right to effective assistance of counsel." *Buck v. Davis*, 580 U.S. ---, ---, 137 S. Ct. 759, 775 (Feb. 22, 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)); *see also Premo v. Moore*, 562 U.S. 115, 121 (2011). "A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *Buck*, 580 U.S. at ---, 137 S. Ct. at 775 (citing *Strickland*, 466 U.S. at 687). Prejudice has been defined by the Supreme Court as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 775. "Recognizing the 'tempt[ation] for a defendant to second guess counsel's assistance after conviction or adverse sentence,' . . . counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen*, 563 U.S. at 189 (alteration in original) (quoting *Strickland*, 466 U.S. at 689–90); *see also Bierenbaum v. Graham*, 607 F.3d 36, 50–51 (2d Cir. 2010) (stating that the *Strickland* standard is "highly deferential" to eliminate the "distorting effects of hindsight"). On habeas review, "the question is not whether counsel's actions were reasonable . . . [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. "Surmounting *Strickland*'s high bar is never an easy task." *Id.* (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

---

"therefore cannot show materiality under *Brady* or prejudice from his failure to raise the claim earlier"); *see also Trevino*, 569 U.S. at 429 (holding that a petitioner may demonstrate cause if a procedural default was caused by post-conviction counsel's failure to raise an ineffective assistance of counsel claim in a scheme where it is difficult to do so on direct appeal, but remanding to determine "whether [the petitioner's] claim of ineffective assistance of trial counsel is substantial or whether [the petitioner's] initial state habeas attorney was ineffective").

Because Plaintiff is unable to show that the three additional pages of Medical Records are material — that is, that they suggest a reasonable probability of a different verdict, Plaintiff cannot show that the alleged failures of his trial counsel and post-conviction counsel to detect this issue caused him the prejudice necessary to prove a violation of his Sixth Amendment right to effective assistance of counsel. "A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *Bagley*, 473 U.S. at 674–75; *see also Miller v. Angliker*, 848 F.2d 1312, 1321 (2d Cir. 1988) ("[W]e note that the Supreme Court has considered the concept of materiality (or 'prejudice' to the defendant) to be the same for claims of withheld evidence as for claims of ineffective assistance of counsel." (citations omitted)) In addition, while an error by post-conviction counsel may in some cases supply the necessary "cause" to overcome a procedural default, Petitioner cannot assert a separate claim for ineffective assistance of post-conviction counsel, because "a prisoner does not have a constitutional right to counsel in state postconviction proceedings . . . ." *Davila v. Davis*, 582 U.S. ---, --- 137 S. Ct. 2058, 2062 (June 26, 2017) (citing *Coleman v. Thompson,* 501 U.S. 722, 752 (1991)).

Because Petitioner has failed to demonstrate that his unexhausted claims are not "plainly meritless," the Court declines to address the other *Rhines* factors, specifically, whether Petitioner has shown "good cause" or whether a stay is unwarranted because he has engaged in intentionally dilatory litigation tactics. *Rhines*, 544 U.S. at 277–78.

**III. Conclusion**

For the foregoing reasons, the Court denies Petitioner's motion to hold his habeas petition

in abeyance without prejudice.³ *See Larweth v. Conway*, No. 04-CV-0050, 2007 WL 57780, at *2 (W.D.N.Y. Jan. 5, 2007) (denying motion to stay mixed petition "without prejudice to re-filing upon a[n] adequate showing pursuant to *Rhines*, 544 U.S. at 277, that (1) there is good cause for petitioner's failure to exhaust the new claims, and (2) that the claim is not 'plainly meritless'"). Petitioner may seek to amend the petition by removing the unexhausted claims. *Rhines*, 544 U.S. at 278 ("[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." (citation omitted)).

SO ORDERED:

       s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: January 26, 2018
      Brooklyn, New York

---

³ The Court notes that Petitioner's second motion to vacate his conviction pursuant to section 440.10 also appears to contain claims that are not currently in his habeas petition. (*See generally* Mem. in Supp. of Mot. to Vacate J. ("Section 440 Mem."), annexed to Pet. Mot., Docket Entry No. 14; *see also* Pet. Mot. 1 ("Petitioner humbly request [sic] this Court grant a 'Stay and Abeyance' in order for the Petitioner to exhaust his Motion to Vacate Judgment pursuant to CPL [section] 440.10, which contains claims alleging *Napue* and *Brady* violations as well as an 'actual innocence' claim.").) The Court notes that any claims not in the petition cannot be reviewed by the Court, and Petitioner would therefore need to seek amendment of the petition in order to preserve review of any such claims. *See Texidor v. Artus*, No. 06-CV-7173, 2007 WL 754645, at *1 n.4 (S.D.N.Y. Mar. 14, 2007) (reviewing a motion to stay and finding that, where a petitioner who filed a post-conviction motion in state court included a claim not currently in his habeas petition, the petitioner "would have to amend the petition to add it if, in fact, the claim were viable"). The Court, however, expresses no view at this time as to whether such amendment would be permitted.